UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Janelle T.,<br><br>    Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 18-cv-0267 (HB)<br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge[1]

  Pursuant to 42 U.S.C. § 405(g), Plaintiff Janelle T. seeks judicial review of a final decision by the Acting Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). The case is before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 15, 21]. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion for summary judgment, grants in part and denies in part the Commissioner's motion for summary judgment, reverses the Commissioner's decision, and remands the matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**I. Procedural Background**

  Plaintiff filed an application for DIB on February 2, 2015, alleging she was unable

---

[1] The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

to work because of a disabling condition as of December 22, 2014. (R. 149.)[2] Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). The hearing was convened on January 3, 2017. (R. 31-58.) Plaintiff and vocational expert Cheryl Zilka testified.

Plaintiff testified that she worked in the Freeborn County auditor/treasurer's department from 2008 through December 22, 2014. (R. 39.) She has not looked for employment since she stopped working. (R. 40.) Plaintiff testified she was not able to work because of mid back pain, low back pain, and headaches. (R. 40.) She experienced dull headaches every day. (R. 40.) Botox injections were administered every three months and were effective beginning about two to three weeks after they were administered until about two to three weeks before the next injection could be scheduled. (R. 40, 44.) Between injections, her headaches were aggravated by activities such as riding in a car, bright lights, and using a computer. (R. 40-41.) Plaintiff also experienced migraines, which made her feel nauseated and required her to lie down in a dark room with a cold washcloth on her forehead for the rest of the day. (R. 49.) Just after she stopped working in 2014, she was experiencing five or six severe migraines a month. (R. 50.)

Plaintiff testified that she also felt cervical spine pain from her neck to her shoulder daily. (R. 42.) Branch blocks were not effective. (R. 51.) She also noticed cognitive difficulties and memory loss. (R. 41.) In addition to the Botox injections,

---

[2] The Social Security Administrative Record ("R.") is available at Doc. No. 11.

she took Duloxetine for depression, anxiety, and pain. (R. 44.)

Plaintiff testified that she needed to rest constantly throughout the day and could fold only half a load of laundry before needing a break. (R. 41.) She could occasionally drive to the pharmacy and shop with her husband. (R. 47-48.)

After Plaintiff testified, the ALJ asked Ms. Zilka to consider a hypothetical individual of Plaintiff's age and education, with past work as an administrative clerk, and the following limitations: lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting, standing, and walking limited to 6 hours in an 8-hour workday; pushing and pulling limited to 50 pounds occasionally and 25 pounds frequently; occasional climbing of ladders, ropes, or scaffolds; no exposure to unprotected heights or moving mechanical parts; occasionally operating of a motor vehicle; no exposure to extreme cold, extreme heat, or vibration; no more than moderate noise levels; simple, routine, repetitive tasks; making simple, work-related decisions; occasionally interacting with supervisors; and occasionally interacting briefly and superficially with coworkers and the general public. (R. 54-55.) Ms. Zilka testified that such a person could not perform Plaintiff's past work, but could work as a dry cleaner helper, tag stubber, or cleaner. (R. 55-56.)

The ALJ issued an unfavorable decision on March 22, 2017. (R. 16-26.) Pursuant to the five-step sequential evaluation procedure outlined in 20 C.F.R. § 404.1520(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since December 22, 2014. (R. 18.) At step two, the ALJ determined that Plaintiff had severe impairments of chronic neck pain with associated headaches and migraines, degenerative

3

disc disease of the cervical and thoracic spine, major depressive disorder, anxiety disorder, and obstructive sleep apnea. (R. 18.) The ALJ found at the third step that no impairment or combination of impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 18.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[3]

> to perform medium work as defined in 20 CFR 404.1567(c) [sic] (lift/carry, push/pull up to 50 pounds occasionally and 25 pounds frequently; sit for about 6 hours, and stand/walk for about 6 hours total in an 8-hour workday) except the claimant is limited to occasional climbing of ladders, ropes, or scaffolds, can never work at unprotected heights or around moving mechanical parts, is limited to occasional operation of a motor vehicle, and should never work in extreme cold, extreme heat, or vibration. The claimant can work in moderate noise. She is limited to simple, routine, repetitive tasks with simple work-related decisions. She is limited to occasional, brief and superficial contact with coworkers, supervisors, and the public . . . .

(R. 21.) At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work as an administrative clerk. (R. 24.) At step five, however, the ALJ found that Plaintiff could work as a dry cleaner helper, tag stubber, or cleaner. (R. 25.) Therefore, Plaintiff was deemed "not disabled."

Plaintiff sought review by the Appeals Council, which denied her request. (R. 1.) The ALJ's decision therefore became the final decision of the Commissioner. (R. 1.)

---

[3] An RFC assessment measures the most a person can do, despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

4

Plaintiff then commenced this action for judicial review.  She contends the ALJ erred by (1) failing to account fully for symptoms associated with her migraines and headaches; (2) not addressing the opinion of her treating physician, Dr. Michael Ulrich; (3) not addressing limitations opined by an examining neuropsychologist, Dr. Jackie L. Micklewright; and (4) failing to consider her work history in assessing her credibility. (Pl.'s Mem. Supp. Mot. Summ. J. at 1 [Doc. No. 16].)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties.  The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.     Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision.  42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).  The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  In other words, if it is possible to reach two inconsistent positions

from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III. Discussion

### A. The ALJ's Evaluation of Plaintiff's Subjective Symptoms

It is well-established that an ALJ must consider several factors in evaluating a claimant's subjective symptoms, in addition to whether the symptoms are consistent with the objective medical evidence. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). These factors include the claimant's daily activities; work history; intensity, duration, and frequency of symptoms; side effects and efficacy of medications; triggering and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322; SSR 16-3p, 2016 WL 1119029, at *5. The ALJ need not explicitly discuss each factor, *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005), however, and a court should defer to the ALJ's findings when the ALJ expressly discredits the claimant and provides good reasons for doing so, *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990).

Here, the ALJ determined that the intensity, persistence, and limiting effects of Plaintiff's symptoms were not as severe as she claimed. (R. 21.) The ALJ cited to 20 C.F.R. § 404.1529, which sets forth factors similar to those in *Polaski* and SSR 16-3p, including a claimant's prior work record, but the ALJ did not specifically mention or discuss Plaintiff's prior work record. In fact, the ALJ did not explicitly discuss any factor other than the objective medical evidence in evaluating Plaintiff's symptoms at step four of the sequential evaluation. (R. 21-22.) The extent of the ALJ's substantive discussion of the relevant factors was: "Objective and clinical findings were generally minimal and the claimant was capable of more than alleged." (R. 22.) The ALJ then proceeded to weigh the opinions of medical sources.

Granted, Plaintiff does not challenge the entirety of the ALJ's evaluation of her symptoms; she argues only that the ALJ failed to consider her prior work record. Ordinarily, an ALJ's omission of this (or any) factor, alone, would not constitute grounds for remand. But here, where the ALJ did not address at step four any factor other than the objective medical evidence in his evaluation of Plaintiff's statements, the Court believes that the ALJ's failure to consider Plaintiff's prior work record warrants remand. *See* SSR 16-3p ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."); *cf. Roberson v. Astrue*, 481 F.3d 1020, 1025-26 (8th Cir. 2007).

In *Roberson*, a case actually cited by the Commissioner here, the plaintiff also argued that the ALJ erred by not considering her favorable work history. *Id.* at 1025.

7

The court advised that "[i]t might have been better if the ALJ had referred specifically to Ms. Roberson's work record," but reasoned "that the portions of the record that he referred to were sufficient to support his credibility determination." *Id.* at 1025-26. Here, however, the ALJ did not refer to other, supporting portions of the record in his evaluation of Plaintiff's symptoms. Thus, not only is *Roberson* distinguishable from the present case for the position advanced by the Commissioner, but it lends support to the conclusion that where an ALJ does not consider any factor other than the objective medical evidence, the ALJ's failure to consider a claimant's prior work record (or any factor) warrants remand.

In addition, though the Commissioner contends that "[t]he ALJ discussed several relevant factors in his credibility analysis"—specifically, the effectiveness of Botox injections and Plaintiff's daily activities (Def.'s Mem. Supp. Mot. Summ. J. at 24)—the discussion of daily activities actually occurred at step three, as part of the ALJ's consideration of whether Plaintiff's mental impairments met or medically equaled two listed impairments. (R. 19-20.) The ALJ did not incorporate that step three discussion of daily activities into his evaluation of Plaintiff's statements at step four, other than making a generalized reference to "reasons explained in this decision." Nor did the ALJ otherwise explain how his findings at step three detracted from Plaintiff's statements at step four. As to the effectiveness of Botox injections, the ALJ noted in his recitation of the objective medical evidence that Botox injections had been helpful in the past, "but not as much currently," and equivocally concluded that the record both "support[ed] the claimant's headaches" and "support[ed] that the Botox injections are helpful." (R. 23.)

8

Thus, though the ALJ may have discussed the Botox injections in the context of the objective medical evidence, the discussion does not support a finding that the efficacy of Botox was inconsistent with the severity of Plaintiff's claimed symptoms.

Consequently, in light of the above errors, the Court will reverse the ALJ's decision and remand the matter for a proper evaluation of Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms. On remand, the ALJ should not feel constrained to consider only Plaintiff's prior work history, but should engage in a more robust analysis of all the relevant factors.

### B. Plaintiff's Migraines

Plaintiff argues that the ALJ failed to account for all of the effects of her migraines, specifically, sensitivity to light, her inability to stay on task and need to lie down until the migraines subsided, and other symptoms that were exacerbated when the effectiveness of the Botox injections waned. (Pl.'s Mem. Supp. Mot. Summ. J. at 9.) Plaintiff takes issue with the ALJ's statement that he accounted for the effects of her migraines by limiting her to routine, repetitive tasks, with other environmental restrictions such as no exposure to extreme cold, extreme heat, or vibration.

The ALJ recounted Plaintiff's testimony that she was not able to work in part due to headaches, that her headaches were aggravated by bright light and computer work, that she had five to six migraines a month, that she needed to lie down in complete darkness when she had a migraine, that she did not do anything on days she had a migraine, and that Botox took the edge off her headaches but was not effective for the full three months between appointments. (R. 20, 22.) The ALJ identified supporting medical evidence that

9

Plaintiff had mild difficulties with attention and organization, needed additional time to process information and complete tasks, and was moderately limited in concentration, persistence, and pace. (R. 20.) The ALJ cited other medical evidence of reports of headaches, normal neurologic exams, an "essentially negative" MRI, full and pain-free range of motion in the cervical spine, and varying effectiveness of Botox. (R. 22-23.) The ALJ found that the medical records "reflect minimal objective findings, though [they] do support the claimant's headaches." (R. 23.) In light of evidence that Botox injections had been "helpful," however, the ALJ concluded that the medical records did "not support limitations greater than those provided in the [RFC]." (R. 23.)

The ALJ gave great weight to the opinions of non-examining consultants who opined that Plaintiff would be limited to routine, repetitive three-to-four step tasks and moderately limited in concentration, persistence, and pace. (R. 23.) The ALJ gave significant weight to Dr. Micklewright's neuropsychological evaluation and examination findings from January 2015, which documented "a great deal of physical pain that would likely require accommodation" and "attentional fluctuations secondary to pain, stress, nonrestorative sleep, and fatigue." (R. 23.) Dr. Micklewright recommended that Plaintiff allow herself extra time to complete tasks, not work under time constraints, take frequent breaks to renew her concentration, and establish routines. (R. 23-24.)

The ALJ gave little weight to treatment notes from 2015, because they were based largely on Plaintiff's self-reports, inconsistent with PHQ-9 scores, and inconsistent with the lack of specialized mental health treatment. (R. 24.) The ALJ remarked that Plaintiff "did have headaches as noted above, but this is accommodated for by the limitations to

10

routine, repetitive tasks, and by limiting the claimant to a medium level of exertion with additional environmental restrictions." (R. 24.)

The Court finds that the ALJ adequately accounted for Plaintiff's inability to stay on task in assessing her RFC, but the ALJ did not discuss and either account for or discount her sensitivity to light, her professed need to lie down until her migraines subsided, or how the variable effectiveness of Botox injections caused the severity and limiting effects of her symptoms to wax and wane. Nor did the ALJ include in the RFC any limitations that would accommodate these symptoms. The omission of an accommodation for Plaintiff's sensitivity to light is particularly glaring in view of the ALJ's restrictions from working in extreme temperatures, around vibration, or in more than a moderately noisy environment.

Defendant argues that the ALJ properly omitted Plaintiff's claimed effects of migraines from the RFC because the ALJ found the severity of those symptoms inconsistent with the evidence of record. As discussed in Part III.A, however, the ALJ's consideration of Plaintiff's subjective symptoms was flawed. Moreover, the ALJ did not specifically discuss or discount Plaintiff's claimed sensitivity to light or need to lie down until her migraines subsided, and the ALJ did not discount—but instead credited— Plaintiff's statement that the effectiveness of Botox fluctuated.

Relatedly, Defendant points out that the ALJ acknowledged that Plaintiff's Botox injections varied in effectiveness. The parties are in agreement on that point. But the error occurred when the ALJ failed to complete the discussion and address Plaintiff's sensitivity to light, need to lie down, and any other symptoms caused by the waning

11

efficacy of the Botox injections.

In sum, the Court finds the matter should be remanded for the ALJ to specifically consider Plaintiff's sensitivity to light, professed need to lie down until the migraines subsided, and overall effectiveness of the Botox injections.

**C.     The ALJ's Consideration of Dr. Ulrich's Opinions**

Dr. Ulrich treated Plaintiff for headaches and other pain, and he offered several opinions concerning Plaintiff's ability to work. The ALJ did not discuss Dr. Ulrich's opinions at all.

The first opinion Plaintiff references was a statement by Dr. Ulrich on February 5, 2015, that Plaintiff was "unfit [for] work related to [headaches]." (Pl.'s Mem. Supp. Mot. Summ. J. at 12; R. 333.) The ALJ was not required to give this statement any weight "because it invades the province of the Commissioner to make the ultimate disability determination." *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007); 20 C.F.R. § 404.1527(d) (instructing that opinions that a claimant is disabled, has a certain RFC, or is subject to certain vocational factors are determinations reserved for the Commissioner). Thus, the ALJ did not err in failing to discuss it.

On April 1, 2015, Dr. Ulrich opined:

> I agree that she has significant disability and I do not feel that she is able to continue working at this point as documented previously. She has profound fatigue and pain as noted. *In a given day she would have to stop and rest at unpredictable times and would be unable [to] work at least 3 to 5 days out of a month.*

(R. 440) (emphasis added). Similarly, on October 1, 2015, Dr. Ulrich wrote:

> Multiple trigger points and this is related to her chronic neck pain and

12

> dystonia. This also leads to headaches which have been very frustrating for her. We did discuss disability issues in detail as well. I had forwarded some documentation in support of that. Given her symptoms, I have advised that she does not appear fit for work at this time and this continues. Prognosis is poor for return to activity. *In a 30-day period she would have to call in unfit to work at least 4 to 5 times at the very least if she was able to work in any capacity and in a given day she would have to stop and rest at least 3 to 4 times in an unpredictable fashion.*

(R. 500) (emphasis added).

A treating source's opinion on the nature and severity of a claimed impairment is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Correspondingly, an ALJ need not give controlling weight to an opinion that is not well-supported by clinical findings or laboratory techniques or is inconsistent with other substantial evidence. *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009). If the opinion of a treating source is not afforded controlling weight, the ALJ must consider the following factors in deciding what weight is due: (1) the existence of an examining relationship; (2) the nature of the treatment relationship, such as length of treatment and frequency of examination; (3) the degree to which the opinion is supported by medical evidence such as medical signs and laboratory findings; (4) consistency with the record; (5) the source's specialty; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c). The ALJ is not required to explicitly discuss each and every factor, as long as he or she considers all the factors and gives good reasons for the weight assigned. *See Combs v. Colvin*, No. 8:12-cv-429, 2014 WL 584741, at *11 (D. Neb. Feb. 12, 2014); *Derda v. Astrue*, No. 4:09-cv-1847 AGF,

13

2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011).

The ALJ did not evaluate Dr. Ulrich's opinions as required by § 404.1527(c). (*See* R. at 22-24.) The ALJ did not identify Dr. Ulrich as a treating provider, refer to Dr. Ulrich by name, refer to the April or October 2015 opinions, or give any weight to those opinions. The ALJ did cite to a 58-page exhibit that contained the October 2015 opinion, but only as evidence of Plaintiff's self-reports of pain and diagnoses of depression and anxiety located elsewhere in that exhibit. (R. at 24 (referring to Exhibit 16F).) The ALJ did not cite to the exhibit that contained the April 2015 opinion (labeled as Exhibit 11F in the administrative proceeding) at all.

Defendant argues that although the ALJ did not specifically mention Dr. Ulrich by name in his decision, the ALJ inherently rejected Dr. Ulrich's opinion because the ALJ rejected Plaintiff's self-reports that she would need unpredicted breaks and time off work. But the standard for rejecting a claimant's subjective statements is not the same as the standard for rejecting a treating physician's opinion. Moreover, the portion of the decision cited by Defendant refers to Exhibits 8F and 13F, not Exhibits 11F and 16F. Not only do Exhibits 8F and 13F not contain Dr. Ulrich's April and October 2015 opinions, but the ALJ characterized the evidence as Plaintiff's self-reports, not as opinions of a treating medical source.

There is no question that the ALJ did not identify Dr. Ulrich as a treating source, nor did the ALJ consider whether Dr. Ulrich's April and October 2015 opinions were entitled to controlling weight or apply the § 404.1527(c) factors to those opinions. The ALJ's cursory statement that he "considered opinion evidence in accordance with the

14

requirements of" § 404.1527 and applicable social security regulations (R. 21) is insufficient to meet his statutory obligations in weighing evidence from a treating medical source. Consequently, the matter must be remanded for consideration of Dr. Ulrich's April and October 2015 opinions.

### D. The ALJ's Consideration of Dr. Micklewright's Evaluation

Dr. Micklewright, a neurologist, examined Plaintiff on January 30, 2015, at the request of Plaintiff's pain management specialist. (R. 285-91.) Testing revealed average verbal comprehension and perceptual reasoning intellectual abilities, borderline to low average auditory attention and working memory, low average visual attention, low average cognitive speed, low average working memory, normal visual scanning, normal sequencing, normal set-shifting, normal motor speed, low average expressive language abilities, low average phonemic fluency, average semantic fluency, average auditory verbal learning abilities, normal retention and recall of information, average recognition memory, normal visuospatial memory abilities, average mental flexibility and set shifting, high average visual attention, high average sequential reasoning, high average problem solving, extremely efficient problem-solving, and average fine motor speed. (R. 288-89.) Dr. Micklewright found no objective evidence of memory impairment, but found the evaluation "notable for fluctuating attention and cognitive speed and processing accuracy." (R. 289.) Otherwise, Plaintiff's cognitive abilities were normal. (R. 289.) Dr. Micklewright believed Plaintiff could return to work, but that Plaintiff would need some accommodations at work, especially when she felt pain, stress, or fatigue. (R. 290.) Dr. Micklewright suggested several "strategies" to "facilitate/optimize

15

her functioning in daily life" such as making lists, allowing extra time to complete tasks, posting reminder notes, using a daily planner, using a filing system, breaking down information into small units, repeating information, putting items such as keys in the same place, establishing routines, and not working "under extreme time constraints." (R. 290.) Dr. Micklewright also "encouraged" Plaintiff "to take frequent breaks to renew her concentration." (R. 290.)

The ALJ gave significant weight to Dr. Micklewright's opinion because it was supported by objective medical findings. (R. 24.) The ALJ described the opinion as consistent with the limitations of the RFC, "which allows for routine and repetitive settings." (R. 24.)

Plaintiff characterizes the "strategies" suggested by Dr. Micklewright as functional limitations that the ALJ should have incorporated expressly into the RFC. The Court disagrees. The strategies Dr. Micklewright suggested were not the type of limitations typically incorporated directly into an RFC assessment. Significantly, Dr. Micklewright did not opine that Plaintiff could not work unless the strategies were implemented. Rather, Dr. Micklewright suggested the strategies to "facilitate" and "optimize" Plaintiff's functioning not just at work, but in daily life in general.

Furthermore, an ALJ need not "mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Here, the ALJ adequately accounted for the "mild difficulties with attention and organization" (R. 290), which underlay the strategies recommended by Dr. Micklewright, by limiting Plaintiff to simple, routine, and repetitive tasks with simple work-related decisions. The Court finds

that the ALJ did not err in his consideration of Dr. Micklewright's opinion and that the ALJ adequately accounted for the limitations that engendered the strategies recommended by Dr. Micklewright in his assessment of Plaintiff's RFC.

## IV. Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Janelle T.'s Motion for Summary Judgment [Doc. No. 15] is **GRANTED IN PART** and **DENIED IN PART**;

2. Commissioner Nancy A. Berryhill's Motion for Summary Judgment [Doc. No. 21] is **GRANTED IN PART** and **DENIED IN PART**;

3. The matter is **REMANDED** for (1) a proper evaluation of Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms, including, but not limited to, prior work history; (2) reconsideration of Plaintiff's sensitivity to light, the relative ineffectiveness of Botox a few weeks before and a few weeks after injections are administered, and Plaintiff's professed need to lie down until the migraines subside; and (3) consideration of Dr. Ulrich's opinions.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 18, 2019       s/ *Hildy Bowbeer*
    HILDY BOWBEER
    United States Magistrate Judge